IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HARUKA URATA-KARPEL, <br><br> Plaintiff, <br><br> v. <br><br> GENJI, LLC, PEACE DINING CORPORATION, TETSUYA (JOSH) ONISHI <br><br> Defendants. | Civil No. _____ <br><br> **JURY DEMAND** |

## CIVIL ACTION COMPLAINT

Plaintiff, Haruka Urata-Karpel, by and through her undersigned counsel, J. Downs Law, brings this action against Defendants, Genji, LLC, Peace Dining Corporation, and Tetsuya (Josh) Onishi ("Defendants") for combined gender and age discrimination under Title VII of the 1964 Civil Rights Act 42 U.S.C.A. 2000 e-2, et, seq; under 42 U.S.C.A. §1981; the AgeDiscrimination in Employment Act ("ADEA") 29 U.S.C. §621, et seq.; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951-963, et seq , et seq; and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. arising from Defendants unlawful termination of Plaintiff and failure to pay Plaintiff what she was owed.  Plaintiff alleges and avers the following:

## PARTIES

1. The Plaintiff, Haruka Urata-Karpel ("Karpel" or "Plaintiff"), is an individual Asian female, 51 years old, and a prior employee of the Defendants.

2. The Defendant, Genji, LLC and Peace Dining Corporation, ("Defendants", or collectively "Company") is a prior employer of Plaintiff with a business address of Two Penn Center, JFK Blvd., Suite 725, Philadelphia, PA 19102.

3. Tetsuya (Josh) Onishi ("Onishi") is the CEO of Peace Dining Corporation, and its subsidiary of Genji LLC.

## JURISDICTION AND FILING

4. Subject matter jurisdiction for Plaintiff's claims is proper under federal question jurisdiction, 28 U.S.C.A. §1331 and §1367.

5. Venue is proper before the United States District Court for the Eastern District of the United States as Defendant resides, is a citizen, and regularly conducts business in Philadelphia, Pennsylvania, and thus avails itself of the Eastern District of Pennsylvania. Additionally, all actions and omissions giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania as required by 28 U.S.C. §1391(b).

## ADMINISTRATIVE PREREQUISITES TO SUIT

6. Plaintiff filed a complaint alleging age discrimination, gender discrimination, and violations of the Pennsylvania Wage Payment Collection Law with the Pennsylvania Human Relations Commission and cross filed with the Equal Employment Opportunity Commission, at PHRC Case No. 201604524 and EEOC Case No. 17F201860142 respectively. A right to sue by each Commission has been provided and attached hereto with the Amended Complaint as Exhibit A.

## FACTUAL ALLEGATIONS

7. Plaintiff is female and was born on April 25, 1967.

8. Plaintiff started working for Defendant on October 13 of 2003, as a HQ Administration Manager.

9. In January 2007, Plaintiff was appointed Internal Audit Manager, within a new department of the company.

10. Due to her extensive prior experience and commitment of Plaintiff, she was appointed Senior Manager, Standards Development in January 2008.

11. Shortly after these promotion, and commencing in the year of 2008, the Company systematically discriminated against females and older female workers.

12. Shingo Kanai ("Kanai"), as COO in 2008, improperly removed Plaintiff's "Senior" title as soon as he became Plaintiff's direct supervisor.

13. In fall of 2008, Plaintiff was appointed to Divisional Administration Manager (operational purchase and inventory data management function), a new department of the Company.

14. In October 2009, Plaintiff was assigned to Supply Chain Manager, a new department of the company, based on the operational knowledge of Plaintiff and her overall skill set.

15. In 2010, Kanai became president and CEO of the company. While he was in the position, there were no female senior managers included in the directors' meeting, the company's decision-making function for 6 years. The Head of Food Safety and Plaintiff were two senior level female managers when he took the position, however, they were pushed out of the decision-making group with minor adjustment of the organization by Kanai.

16. During this time, the Company treated females in a less favorable manner than he treated male hires, and female workers did not receive the benefit of more lenient policies within the Company, as male hires received.

17. Every time female managers made presentation or shared opinions, he stepped out from the room, or ignored them intentionally.

18. Kanai made sure that Plaintiff knew he was not taking her opinions seriously, and younger, less experienced male managers quickly became senior management.

19. In August 2010, Plaintiff's Title changed to Purchasing Manager for Ghg Logistics, a new subsidiary of the company.

20. In March 2011, Plaintiff was promoted to Senior Purchasing Manager, nominated for company's Best Manager Award.

21. Early 2012, Plaintiff was nominated for the Best Manager Award.

22. Plaintiff had a stellar performance history and was so committed to the assigned projects and deadlines that she rarely was able to take a vacation day, due to her dedication, lack of departmental head-count, and the volume of a growing business.

23. Despite being nominated for the Best Manager Award two years running, Plaintiff was demoted to Manager, from Senior Manager, in November of 2013, from Senior Manager, and was told it was not linked to performance but due to an "organizational structure change." Plaintiff was the only senior level manager demoted from her tier, was treated differently because she was female, and also received less benefits. Even Plaintiff's subordinate, a male employee, Toshiharu Haruki ("Haruki"), did not lose his assistant manager title at this time, and did not suffer a loss in salary or benefits, even though it was explained by the Company that he would lose that title.

24. In March of 2015, Onishi was Co-President with Kanai, and the discrimination against female workers continued.

25. A male employee, Izumi Koito ("Koito"), was appointed to be Director of Merchandising and became Plaintiff's supervisor, even though he previously failed in running the company's critical LA operation (Koito lost the contract in 2 years). Nevertheless, this male employee continued to receive senior management titles, all while CEO Defendant Onishi started to discourage and discriminate against experienced female employees, including Plaintiff. Supplementary, Koitocompletely failed to provide direction and leadership to Plaintiff's Department.

26. Defendant Onishi, invested in younger male employees, Walid Jahangeer and Alex Si, and allowed them to obtain degrees all while their lack of attention to the Company caused critical system development delays, and assigned consultants to help these male employees with their jobs. Plaintiff did not receive the same treatment.

27. Accounting Manager, a male employee, Walid Jahangeer, received more favored treatment, and was rapidly promoted from accounting manager, to controller, and then to VP of Accounting, Financing, and HR within 3 years, even though, upon information and belief, under his leadership his team paid out to an unknown hacker $150,000, and his direct subordinate stole $15,000 of Company money due to lack of security and basic checks and balances in his department.

28. A Project Manager position was created for male employee, Alex Si, who was allowed to take time to study while many IT projects were delayed.

29. Male employee, Alex Si, continued to receive preferential treatment based on being a male employee and became the IT manager position, became Project Manager, then IT Director, and VP of IT and a subsidiary logistics company, as well as position in Central Kitchen in just 3-4 years, without any record of accomplishment.

30. The culture of the Company was to harass female employees, and demean and diminish their efforts all while the male employees were guaranteed support from Defendant Onishi and Kanai.

31. In 2014, another female Operations Manager was pushed out of the most profitable operations area to a less profitable rural area causing a correlative reduction in pay so that the Company could promote a male employee who wanted to come to the East Coast for personal reasons.

32. The discriminatory treatment of Plaintiff continued, and in the Fall of 2015, when out of the blue, another male manager with little to no relevant current experience, was assigned to be co-Purchasing Manager with Plaintiff.  It was Defendant Onishi's decision since this male employee expressed interest in the purchasing job.  Nevertheless, instead of assigning him to work under Plaintiff, the male worker immediately was assigned to be a co-manager. Plaintiff was not tasked to manage this co-worker and it was Koito's responsibility, Plaintiff was blamed for the underutilization of the male co-manager.  Koito did not receive any negative review or comment from this failure to manage and this male co-manager was made the Vice President of a different department in just a couple of months.

33. In or about February of 2016, Plaintiff made an internal complaint to Human Resources, that a male employee, Haruki, an employee under Plaintiff's direct report, was underperforming, was treated more favorably in holding his title, as Assistant Manager when Plaintiff's title was demoted in 2013.  Haruki as a result also received a higher bonus payout, compared to other same tier female employees who received half as much, even when those female employees had higher evaluation scores.

34. The Company via Koito intentionally usurped Plaintiff's role as she was this male employee's direct supervisor who would have reviewed the bonus in normal course of business.

35. In retaliation for Plaintiff's negative performance review of Haruki, Koito ensured that Plaintiff would not receive severance, earned vacation hours and unemployment upon her termination, where the male employee, Haruki, did receive such severance.

36. In or about the Winter of 2015, into 2016, Plaintiff made an internal complaint to Human Resources because Alex Si singled out Plaintiff, who has a medical condition that made it difficult to stand for over 30 minutes, as the only one "sitting down" despite other employees remaining seated at the meeting.  This required Plaintiff to disclose her medical condition after the incident, "stand while attending meetings rule" was reviewed and eliminated.

37. In May of 2016, Defendant Onishi, belittled female contribution to the Company, and stated, in front of suppliers, Koito, and Plaintiff, that he intentionally chooses unattractive persons if he has to hire a female direct report, in order to avoid any potential trouble since he could not trust his behavior.

38. In May of 2016, despite many relatives of existing employees being hired with the Company, Defendant Onishi denied Plaintiff's college son from a summer internship at the Company despite the fact that there was an urgent need for assistance in Plaintiff's Department for assistance to Plaintiff's subordinates.

39. In March of 2016, Plaintiff was reassigned Group Manager (Senior Manager) title.

40. Plaintiff made another internal complaint against Alex Si when he further discriminated against her, in early 2016 when she could not attend an internal brain storming session due to being admitted to the hospital ER the night before.  While Plaintiff asked her subordinate to

attend the meeting in her stead, and raised important issues after reviewing the meeting minutes, Alex Si berated Plaintiff, and treated her differently from her male counterparts by holding her to a different standard.  Alex Si attempted to discipline Plaintiff for not attending a meeting even though he was fully aware that she was in the Emergency Room.

41. The Company was acquired by a new owner, the Hana Group, in June of 2016.  Prior to a meeting with the new owner, Plaintiff explained to Alex Si and Koito the lack of system implementation issues relating to the Company's purchasing and supply chain, in addition to other matters, in an effort to assist as Alex Si was assigned to present procurement side of issues to the new owners.  Not only was Plaintiff not credited with identifying the issues, these issues were used in a memo drafted by Alex Si to support her subsequent termination even though the issues related to an area that Alex Si had ownership and not that of Plaintiff.

42. In May-June 2017, Alex Si put a security camera right above Plaintiff's department island, an island comprised mostly of female staff, so that her work area could be observed at all times.  Plaintiff's staff and Plaintiff were made very uncomfortable by this, and it was requested that this security camera be moved to a different location.  Alex Si changed the location but installed a 360-degree camera to still capture Plaintiff's island activities all the time while other male supervisors did not have the same treatment.  There were many locations in the office where the camera could have been placed that would not have disturbed Plaintiff's work island.  Eventually, after HR and IT manager stepped in, the camera was turned off.

43. In June of 2016, after the acquisition of the company by the Hana Group, Onishi, understanding that the new company was leaner and younger with significant fewer staff, laid off 4 male staff members, and all were provided severance, and their termination was

described as "laid off due to position elimination," even where at least one of the male staff member, Haruki, under Plaintiff's supervision, had repeated poor performance reviewed.

44. Defendant Onishi set out a deliberate course to undermine Plaintiffs term and value to the Company all while highlighting and raising the contribution of younger male employees.

45. During the first purchasing meeting with new owner team, Plaintiff attended to support male employee Koito and his presentation and prepared the presentation. Defendant Onishi introduced male employee Koito as having 10 years of experience, but introduced Plaintiff as having 7 years in purchasing, even though she had 12+ years of management experience in the company and joined earlier than male hire Koito, and also held the same various managerial roles as him. Defendant Onishi made sure that Plaintiff came across to the new management team as less experienced and less capable than the male supervisor. Onishi and Koito also did not credit Plaintiff for pulling together the presentation.

46. During the years of 2010 to 2016, when the Company had 3 major business plans, - establishment of distribution center, start and ending of LA operations and fast casual restaurant chain - Plaintiff's Department did not receive the proper head count or proper IT support. This forced Plaintiff to work very long hours and prevented her from taking any of her accumulated vacation hours. Plaintiff authorized her subordinates vacation hours and FMLA leave first, and there was no time left for her vacation time.

47. Each year, Human Resources set a policy for vacation carry over and would make an adjustment showing the accumulated hours. At the time of her discriminatory termination, detailed below, Plaintiff's paystub showed 368 hours of accumulated vacation which she never received. The Company has a practice of paying out other terminated employees vacation hours unless a severe violation had occurred.

48. On September 2, 2016, Plaintiff was terminated with a cited reason of poor performance despite never receiving negative performance reviews.

49. As a pretext for the discriminatory termination, and after 13 years of no negative performance reviews, Defendants cited a single weight conversion mistake on a single excel spreadsheet, even though the correct numbers were presented by Plaintiff the day before. Plaintiff was supporting Koito, who reviewed the spreadsheet, and did not catch the error. Even thought it was Koito's presentation, he was not terminated or demoted because he was a male employee.

50. Plaintiff was replaced with a younger employee.

51. Plaintiff's subordinate, a male employee, was terminated, and the Company paid him severance, and other male employees received severance when Plaintiff did not.  Even though Plaintiff had one minor Complaint she was terminated and had to state that she had been fired for "cause" in subsequent job applications, and did not receive any severance or vacation pay for the unused accumulated vacation pay, hours that were stated as accumulated on Plaintiff's last pay check.  Moreover, the Company denied Plaintiff's unemployment compensation payment when other workers theretofore received, and when the Company only denied it for the most severe violation

52. The Company has further interfered with Plaintiff from further mitigating her damages by making it more difficult for Plaintiff to acquire employment as she needed to truthfully reveal that she was terminated with cause, when she should not have been, in response to questions relating to the application/interview process and inquiry into why she had left the Company after so many years.

## COUNT ONE
## GENDER DISCRIMINATION
## DISPARATE TREATMENT

53. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

54. Defendant is an employer with more than fifteen (15) employees or more for each working day in each of the twenty (20) or more calendar weeks in the current or preceding year.

55. Plaintiff is a female, and in the protected class as contemplated by the Pennsylvania Human Relations Act, and Title VII of the Civil Rights Act of 1964 and 43 P.S. §955.

56. Plaintiff is protected by law and entitled to free, equal and merit-based hiring decisions.

57. Defendants have demonstrated a long and continuing pattern of discriminatory practices relating to the terms and conditions of Plaintiff's employment, including, *inter alia,* the more harsh disciplinary action of terminating Plaintiff, even though she had years of dedicated service and achievements without any negative performance reviews.

58. Defendant s have demonstrated a long and continued pattern of treating male workers in a more favorable manner than female workers in the terms and conditions of employment.

59. Plaintiff was qualified to retain her position, and her years of unblemished work history supports her qualifications.

60. Plaintiff was equally or more experienced than male individuals that were retained by Defendants.

61. Plaintiff received more-harsh disciplinary than other non-protected employees.

62. Defendants have a long history and pattern and practice of discriminating against female workers.

63. Numerous female managers were placed below less, and not capable, male managers.

64. Male managers continued to receive 2nd and 3rd chances, where females were not, even though the male managers lacked the appropriate experience and leadership qualities.

65. Plaintiff was more or equally committed to promoting the success of the Defendants.

66. The decision to terminate Plaintiff was discriminatory.

67. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered wage, loss, loss of back-pay loss, loss of front pay, loss of benefits, loss of amenities of employment, and other economic harms.

68. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered pain and suffering, mental anguish, loss of reputation, and loss of life's pleasures, and similar harms all of significant quality and all to Plaintiff's great detriment.

69. Defendant s' actions were willful, wanton, malicious, reckless, and intentional, and thus warrant the imposing of punitive damages.

70. Defendant s' discrimination against female workers is reprehensible and thus, equitable relief in the form of new hiring practices, supervision, and the implementation of diversity sensitivity training is needed.

**WHEREFORE**, Plaintiff , Haruka Urata-Karpel, hereby demands relief in the form of emotional distress, economic damages, back pay, front pay, non-economic damages, Equitable relief, punitive damages, attorneys' fees and costs, and other such relief as deemed necessary by the Court.

## COUNT TWO
## AGE DISCRIMINATION

71. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

72. Defendants replaced Plaintiff with a younger worker in violation of the ADEA, 29 U.S.C. §626, and 43 P.S. §955

73. Plaintiffs age was the but-for cause of her termination.

74. Defendants actions are in violation of the law.

75. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered emotional distress, wage, loss, loss of back-pay loss, loss of front pay, loss of benefits, loss of amenities of employment, and other economic harms.

76. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered pain and suffering, mental anguish, loss of reputation, and loss of life's pleasures, and similar harms all of significant quality and all to Plaintiff's great detriment.

77. Defendant s' actions were willful, wanton, malicious, reckless, and intentional, and thus warrant the imposing of punitive damages.

78. Defendant s' discrimination against older female workers is reprehensible and thus, equitable relief in the form of new hiring practices, supervision, and the implementation of diversity sensitivity training is needed.

**WHEREFORE**, Plaintiff, Haruka Urata-Karpel, hereby demands relief in the form of emotional distress, liquidated damages, punitive damages, economic damages, back pay, front pay, non-economic damages, Equitable relief, attorneys' fees and costs, and other such relief as deemed necessary by the Court.

## COUNT THREE
## VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT & COLLECTION LAW

79. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

80. Plaintiff accumulated 368 unused vacation hours.

81. Each year, Human Resources set a policy for vacation carry over and would make an adjustment showing the accumulated hours.

82. Plaintiff's employment was terminated and her final paycheck illustrated 368 unpaid vacation hours.

83. The Company would in normal course pay out leftover vacation pay, and only withheld same for the most serious of violations.

84. Well over 30-Days has passed since the last paycheck received by Plaintiff, and Defendant is in violation of the Pennsylvania Wage Payment & Collections Law.

**WHEREFORE,** Plaintiff, Haruka Urata-Karpel, hereby demands relief in the form of payment of accrued vacation hours, plus 25% of the total amount of vacation pay due or $500.00, whichever is greater, economic damages, back pay, front pay, non-economic damages, Equitable relief, punitive damages, attorneys' fees and costs, and other such relief as deemed necessary by the Court.

J. DOWNS LAW

*/s/ Jeffrey S. Downs*
By:_____
Jeffrey S. Downs, Esquire
69 South Main Street
Mullica Hill, NJ 08062
(856) 418-1272

ATTORNEY FOR PLAINTIFF

DATED:  March 12, 2019